UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARI M. MCKEEVER,<br>　　　　　　Plaintiff, | §<br>§<br>§ |
| v. | § Case # 1:18-cv-609-DB |
| COMMISSIONER OF SOCIAL SECURITY, | §<br>§ MEMORANDUM DECISION<br>§ AND ORDER |
| 　　　　　　Defendant. | § |

## INTRODUCTION

Plaintiff Kari M McKeever ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title II of the Social Security Act (the "Act"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No.8) is **DENIED**, and the Commissioner's motion (ECF No. 11) is **GRANTED**

## BACKGROUND

On May 12, 2014, Plaintiff protectively filed a Title II application, alleging a disability beginning on May 1, 2010 (the disability onset date), based on back problems, degenerative arthritis in her back, and complications from a broken femur and shattered knee. Transcript ("Tr.") 143, 319-20, 354. Plaintiff was previously found disabled from October 2008 through January 2010, and "not disabled" from January 2010 through December 2010, in a decision dated

December 20, 2010. Tr. 143. As the ALJ explained, although the current application indicates an alleged onset date of May 1, 2010, the time period through December 20, 2010 has already been adjudicated, and the ALJ determined there was no basis for reopening the prior decision. *Id*. Plaintiff's date last insured is March 21, 2012. *Id*. Thus, the period at issue is from December 21, 2010, the day following the previous decision, through March 31, 2012, the date last insured, approximately a 15-month period. *Id*.

Plaintiff's claim was denied initially on August 5, 2014 (Tr. 240-43), after which she requested an administrative hearing. Plaintiff's hearing was held before Administrative Law Judge Stephen Cordovani (the "ALJ") on December 27, 2016, in Buffalo, New York. Tr. 171-214. Plaintiff appeared and testified from Jamestown, New York, and was represented by Galena Duba-Weaver, an attorney. Tr. 171. Joseph Atkinson, a vocational expert ("VE"), also appeared and testified at the hearing. *Id*. At the hearing, Plaintiff amended her alleged onset date to December 21, 2010, the day following the prior decision finding Plaintiff not disabled from February 1, 2010, through December 20, 2010. Tr. 143, 177-78. The ALJ issued an unfavorable decision in the present case on March 6, 2017, finding Plaintiff not disabled. Tr. 140-62. On March 28, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or

mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 6, 2017 decision:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2012;

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2010 through her date last insured of March 31, 2012 (20 CFR 404.1571 *et seq*.);

3. Through the date last insured, the claimant had the following severe impairments: status-post fractures of left humerus, left femur, and left olecranon; right knee laceration; anxiety disorder; depression; and chronic sinusitis (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

4

5. Through the date last insured, the claimant had the residual functional capacity to perform a substantial range of sedentary work[1] as defined in 20 CFR 404.1567(a)except that the claimant was limited to occasionally climbing ramps and stairs, stooping, balancing, kneeling, crouching, and crawling; and she cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. Non-exertionally, the claimant was able to understand, remember, and carry out simple instructions and tasks; but could not perform supervisory duties, or be held to strict production quotas. She was able to occasionally perform independent decision-making and to adapt to occasional changes in work routine and processes. She could frequently interact with supervisors; and to occasionally interact with coworkers and the general public;

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on November 29, 1983 and was 28 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a));

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 21, 2010, the beginning of the adjudicatory period, through March 31, 2012, the date last insured (20 CFR 404.1520(g)).

Tr. at 143-61.

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on May 12, 2014, Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id*. at 161.

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

## ANALYSIS

Plaintiff essentially asserts a single point of error: the ALJ's RFC finding was not supported by substantial evidence because he failed to rely upon medical opinion evidence for his RFC finding. *See* ECF No. 8-1 at 11-16. Plaintiff takes issue with the ALJ's reliance on a consultative examination report that contained no limitations, even though the ALJ found Plaintiff had multiple limitations. *Id*. at 11. According to Plaintiff, the ALJ improperly used his lay opinion to craft Plaintiff's RFC, rather than developing the record to obtain an appropriate medical opinion. *Id*. Relatedly, Plaintiff asserts that because the ALJ's RFC was not supported by substantial evidence, neither was the resulting hypothetical question posed to the VE. *Id*. at 16-17.

The Commissioner responds that because an RFC is to be determined by the ALJ after considering the evidence contained in the record as a whole, it need not directly correspond or match the opinion of a physician. *See* ECF No. 11-1 at 12 (citing 20 C.F.R. §§ 404.1545, 404.1546). The Commissioner argues that in the instant case, the ALJ properly relied upon medical opinion and other evidence, including his evaluation of Plaintiff's subjective symptoms and consideration of statements from Plaintiff's parents, to determine her RFC. *Id*. (citing Tr. 145-60). In determining Plaintiff's RFC, the ALJ considered Plaintiff's symptoms and the extent to which they were supported by the medical and other evidence in the record. *See* 20 C.F.R. § 404.1529 ("We also consider the medical opinions of your treating source and other medical opinions."); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record").

The Commissioner argues that the ALJ determined Plaintiff's RFC in the prescribed manner, and in so doing, found that Plaintiff's allegations were not entirely consistent with the medical and other evidence in the record. Tr. 145-60. The ALJ found Plaintiff's allegations of disability were inconsistent with the objective evidence, her medication effectiveness, lack of side effects, activities of daily living, work history, and the credible medical opinion evidence. Tr. 145-60 (citing 20 C.F.R. § 404.1529; Social Security Ruling ("SSR") 16-3p). Review of an ALJ's subjective symptom evaluation is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2012) (Because it is the function of the Commissioner, and not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, the Court will defer to the ALJ's determination as long as it is supported by substantial evidence).

The ALJ noted Plaintiff's activities and that she engaged in a reasonably broad range of daily living activities during the period at issue. Tr. 158. She was able to perform personal care and could drive on occasion. Tr. 158, 179, 586. In addition, she read, watched television, and listened to the radio. Tr. 587. At her hearing, Plaintiff testified that she attended school part-time in 2011 and 2012 and obtained her Associates Degree in Medical Technologies. Tr. 179-81. Because she had difficulty climbing stairs at the school, she did her last semester through online courses. Tr. 180-81. Plaintiff also reported that she had assistance from her mother and had a 12-year old daughter who lived with her. Tr. 177. The Commissioner argues that inconsistencies in the evidence, such as with respect to Plaintiff's activities, undermine Plaintiff's allegations of disabling limitations. *See* ECF No. 11-1 at 15 (citing *Poupore v. Astrue*, 566 F.3d 303, 307 (2d

Cir. 2009) (ALJ may reject Plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability).

Plaintiff reported that she was injured in 2008, when she was involved in head-on collision. Tr. 472. She injured her left arm, elbow, thigh, and sustained a pneumothorax, and also suffered a traumatic brain injury. Tr. 472. Plaintiff had undergone several surgeries on the affected extremities, with metal rod implantation, and further surgeries were planned to remove the hardware and to fix a nonunion femur in her leg. Tr. 472. She reported that her pain was generally well-controlled with medication. Tr. 473. In February 2010, Plaintiff was examined by a physician's assistant at Family Health Medical Services. Tr. 472. Upon examination, in both February and April 2010, Plaintiff had a slight gait anomaly and decreased range of motion in her knee, but she was no longer using crutches or a cane and was full weight-bearing for short distances. Tr. 472-73, 475-76. She reported that her surgeon advised that she increase her activity. Tr. 472, 475. During the relevant period a notation in her medical records indicates that her pain is well controlled with her current prescribed medications. Tr. 507.

In June 2010, Plaintiff reported improvement in her left leg and knee pain with her medication regime, and she rated her pain as a 3 out of 10 on a 10-point scale. Tr. 478. In June 2010, x-rays of her left femur indicated no new fracture. Tr. 563. Her July 2010 psychological consult indicated that her psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. Tr. 587. In March 2011, a notation in Plaintiff's records indicates that she had been walking up to 50 minutes but hurt her knee doing Zoomba [sic]. Tr. 508. In January 2012, she was complaining of foot pain. Tr. 536. The records note that her lumbar x-rays were normal. Tr. 536, 568. As late as 2014, cervical and lumbar MRIs were essentially unremarkable noting only mild degenerative changes in the lumbar spine. Tr. 605-08. In 2016, x-

8

rays of the thoracic spine were likewise normal. Tr. 1097. In April 2014, Plaintiff was provided an increase in her medication because she was "going out of town to Disney." Tr. 476.

In this case, the ALJ thoroughly discussed the medical evidence of record and then reviewed the evidence after the date of last insured in order to help determine Plaintiff's residual functional capacity during the time period in question. Tr. 152. The ALJ's review encompasses 12 pages of his opinion. The ALJ notes that Plaintiff's medical treatment had been conservative. Tr. 158. Her medications appear to have been effective without adverse side effects. *Id*. The ALJ also notes that Plaintiff had engaged in a reasonably broad range of daily living activities during the period at issue. *Id*. The ALJ further notes that his functional capacity assessment is supported by the opinions of Drs. Prezio and Duffy; by the reported opinions of Plaintiff's surgeon to increase exercise; and by the evidence of the record as a whole. Tr. 160.

When making a RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with daily work activities. *See* 20 C.F.R. Section 404.1545(a). Objective tests included in the record, such as MRIs and x-rays, can provide further support to the RFC if such are essentially normal. *See Cobbins v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 126, 133 (N.D.N.Y. 2012); *Guerro v. Colvin*, No. 16CIV3290RJSAJP, 2016 WL 7339114, at *17 (S.D. New York) (S.D.N.Y. Dec. 19, 2016), *report and recommendation adopted sub nom. Guerrero v. Comm'r of Soc. Sec.*, No. 16CV3290RJSAJP, 2017 WL 4084051 (S.D.N.Y. Sept. 13, 2017). In deciding a disability claim the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F.App'x 53,56 (2d Cir. 2013). Here, the ALJ reviewed and discussed comprehensive medical notes both before and after the claimed disability onset date indicating that Plaintiff was capable of performing some substantial work

activities. *Whipple v. Astrue*, 479 F. App'x 367 (2d Cir. 2012). Having reviewed the entire medical record, the Court finds that the ALJ did not substitute his own lay opinion in arriving at an appropriate RFC. Accordingly, the Court finds no error in the ALJ's decision.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_/s/ Don D. Bush_
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE